## GREEN, *admr.*, *v.* BROOKS AND WIFE.

BREACH OF TRUST—*claims against estates of deceased persons.* A *breach of trust* creates only a simple contract debt.

Real estate is now assets in the hands of the executor or administrator for the payment of all debts, whether by special or simple contract.

Where J. is appointed trustee for a legatee, the trust creates no specific *lien* upon the property of J.

A subsequent decree of a court of chancery, declaring J. a trustee, is not in the nature of a *judgment* against him.

Only those *judgments* are *liens* on real property of the deceased, which were rendered by courts within the State, and were capable of being liens during the lifetime of the deceased, and were subsisting as such liens at the time of his death.

An affidavit of the justness of the demand must be filed by every person exhibiting a claim against the estate of a deceased person.

It is *too late* to file such affidavit after a *suit* in equity has been brought to establish a claim against the estate, and a *motion* made to dismiss the bill.

*Appeal from Phillips Circuit Court.*

Hon. James M. Hanks, Circuit Judge.

Watkins & Rose, and J. C. Palmer, for appellant.

Under our practice, the general reservation as to sufficiency,. in an answer in chancery, has the effect of a demurrer. *Lorette v. Longmire*, 14 *Ark.*, 339.

The bill should have been dismissed, because the claim was not sworn to, under the statute, prior to the commencement of the suit. *Gould's Dig.*, *chap.* 4, *sec.* 107; *Ryan v. Lemon*, 7 *Ark.*, 78; *Beirne v. Imboden*, 14 *id.*, 237; *Walker v. Byers*, *id.*, 247; *Biscoe v. Sandefur*, *id.*, 594.

The claim here sued on was not excepted out of the general rule. *Walker v. Byers*, 14 *id.*, 246; *State Bank v. Tucker*, 15 *id.*, 241; *Bennett v. Dawson*, *id.*, 414; *Biscoe v. Madden*, 17 *id.*, 539; *Marlatt v. Scantland*, 19 *id.*, 445; *Rector v. Conway*, 20 *id.*, 84; *Pope v. Byrd*, 22 *id.*, 537; *McCoy v. Jackson*, 21 *id.*, 474; *Hill v. State*, 23 *id.*, 604. Where the statute makes no exception, the court can make none. *Erwin v. Turner*, 6 *Ark.*, 14; 13 *id.*, 291; 16 *id.*, 671; 20 *id.*, 18.

Pike, Dixon & Pike, for appellees.

Where the husband has received the property of the wife as trustee, an actual possession will not vest him with the property, for he must have reduced it to possession *as* husband, *and not* in any other capacity. *Taylor on Inf. and Cov.*, *p.* 375, *sec.* 246; *Mayfield v. Clifton*, 3 *Stew.*, 375.

The husband's possession of the wife's choses in action must be in the character of husband, to defeat her title by survivorship. 1 *Williamson's Exrs.*, (2 *Am.* ed.,) 616; *Clancy's Rights of Married Women*, 139–140; *Wall v. Tomlinson*, 16 *Ves.*, 415; *Elms v. Hughes*, 3 *Dessausure*, 160; *Sturginger v. Hannah*, 2 *Nott & McCord*, 147.

If the trustee mixes the trust money with his own, and uses it in his business, the profits of which are not known, he must pay interest. *Brown v. Ricketts*, 4 *J. C. R.*, 303; *Dunscomb, et al., v. Dunscomb's Exrs.*, 1 *J. C. R.*, 508; *Manning, et al., v. Manning's Exrs.*, *id.*, 527; *Mumford v. Murray*, 6 *J. C. R.*, 452; *Miller v. Beverly*, 4 *Humph.*, 415.

WILSHIRE, C. J.

This case may be briefly stated as follows: The complainant, Mary R. Brooks, late Mary R. Jackson, formerly Mary R. Scales, was one of the heirs and legatees of one Joseph H. Scales, late of Tennessee, deceased; that she, and her then husband, Robert H. Jackson, together with the other legatees of Joseph H. Scales, at the April term, 1867, of the chancery court of the State of Tennessee, for the district composed of the county of Williamson, filed their bill to have the will and codicils thereto, of their said ancestors, construed, and the rights of the several legatees thereunder declared and settled, and to have trustees appointed for such of the legatees as required trustees under the will, among whom was the complainant, Mary R.; that that chancery court, in accordance with the prayer of the bill, ascertained and declared the rights of the several legatees, under the will of Scales, and appointed Robert H. Jackson, then the husband of Mary R., her trustee, to receive and hold in trust, for her and her children, the share she was entitled to under the will of her ancestor, and the income, interest and proceeds arising therefrom, to be applied to the support of her and her children; that Jackson accepted such trust, and received the share of said Mary R., of the estate of her ancestor, Scales, consisting of one negro man, valued at $900, and the aggregate sum of $3,309$\frac{90}{100}$ in cash. Subsequently, Jackson died, and his widow, the complainant, Mary R., intermarried with her present husband, and complainant, Wm. Brooks.

The complainants allege that said Jackson, in his lifetime,

as the trustee of Mary R., &c., in violation of his trust, appropriated the whole of the trust fund and property to his own use, and that the same had been incorporated into and become a part of his estate; and they prayed that, in addition to general relief, their claim against Jackson be declared to be paramount to the claim of any creditor of said Jackson, and that the appellant be decreed to pay the same to complainants accordingly, &c.

The defendant answered, admitting some of the allegations of the bill, but denied, in as positive a manner as defendants acting in a fiduciary capacity can do, two allegations, namely: That alleging the receipt by Jackson of the trust fund and property, and the allegation charging the appropriation of the trust fund by Jackson, and the incorporation thereof into his own estate; to which answer the complainants replied in short upon the record.

At the hearing, the defendant moved the court to dismiss the bill for want of the affidavit of the justness of their claim, required by law. The court below overruled the motion to dismiss, made by the defendant, and entered a final decree against the defendant, requiring him to pay to the complainants, out of the general assets of the estate of Jackson, in his hands, as other debts, the sum of $4,844$\frac{29}{100}$, in due course of the administration by him of said estate. The defendant appealed to this court, and assigned, as principal error, that the court below erred in overruling his motion to dismiss for want of the statutory affidavit.

Before discussing the question presented by the principal error assigned, we deem it necessary to inquire into the nature and character of the claim set up by the appellees in the court below, and which they sought, by their bill, to have declared by the decree of that court; a claim in the nature of a specialty debt against the estate of Jackson, to be paid out of the assets of his estate, prior to, and to the exclusion of, the other creditors of his estate.

21

There is, perhaps, no better settled doctrine in the equity jurisprudence of this country than that a breach of trust creates but a simple contract debt. In England, before the statute of 3 and 4 *Will.*, 4, where, in the creation of a trust, the trustee bound himself, by deed, to apply the trust fund in a particular manner, that would create a specialty debt against him, and, after his death, against his estate; but, since that statute, the distinction between simple contract debts and specialty debts, in that country, seems to have become of but little practical importance. We find that the high court of chancery of that country, in the case of *Adey v. Arnold*, 15 *Eng. L. and Eq.*, 268, where, by deed of indorsement under seal, appointing new trustees, and executed by them, a trust fund was assigned to the new trustees " to hold unto them, their executors, &c., as their own money, property and effects; but nevertheless upon the trusts and for the ends and purposes declared by the indenture," &c., it was held, by Lord Chancellor St. Leonards, that there was, in that case, no declaration of trust by the new trustees, and that the breach of trust did not constitute a specialty debt. That learned Chancellor, bringing various authorities in review on the subject, said, " there is no better established general proposition than that a breach of trust does not constitute a specialty debt, but that it is equally clear that when there is a deed executed by the trustee, containing a declaration by him that he will apply the trust fund in a particular manner, but which he had misapplied, that such a breach would constitute a specialty debt, because he had declared, under seal, that he would not apply the fund as he ultimately did apply it," citing the cases of *Verron v. Vandry*, 2 *Atk.*, 119; *Cox v. Bateman*, 2 *Ves., sen.*, 19.

Though it will be observed, that in England, where there has been given a priority, in some instances, to specialty debts, created by deed under seal, over simple contract debts, the courts have been slow to imply a covenant from words that do not import one; but where the words of the deed, executed by the trustee, are clearly to the effect that the trustee undertook

to apply the fund in the mode prescribed by the deed, and the deed was executed by him, it would be tantamount to a covenant; but, as we have seen, in the case of *Adey v. Arnold*, it was held that where there were no words contained in the instrument creating the trust, signed by the trustee, which could by any possibility raise a covenant, the breach is a simple breach of trust, and forms only a simple contract debt.

But in the United States, as in England, real estate is now assets for the payment of all debts, whether by specialty or simple contract, and in many of the American States, and particularly in this State, as we will presently see, the distinction between specialty debts and simple contract debts, in the administration and settlement of the estates of deceased persons, is abolished. By our statute, *Gould's Digest, chap.* 4, *sec.* 99, it is provided that the priority of claims against the estates of deceased persons, are declared to be : " 1. Funeral expenses ; 2. Expenses of last sickness, wages of servants and demands for medicine, and medical attendance during last sickness ; 3. Judgment rendered against the deceased, in his lifetime, and which are liens on the lands of the deceased, &c. ; 4. All demands, without regard to quality, which shall be exhibited to the executor or administrator, properly authenticated, within one year after the first granting of letters on the estate," &c.

It is not, nor can it be from the nature of the trust reposed in Jackson, claimed that the trust creates a lien upon any specific portion of his property ; indeed, it would seem to be difficult to conceive a mode of creating a trust by which such a lien would be created against the rights of delinquent creditors without notice—nor is it assumed that the decree of the Tennessee court, appointing Jackson trustee, is in the nature of a judgment against him. By this we do not wish to leave the impression that the counsel for the appellees would for a moment entertain a proposition so absurd ; but, admit for the present that the decree, appointing Jackson trustee, was a judgment against him, was it a judgment capable of creating a lien upon the lands that he died possessed of, if he

died possessed of any?   It certainly would not be contended
that it was.   Our statute, *chap.* 96, *sec.* 4, *Gould's Digest*,
provides that judgments and decrees rendered in the cir-
cuit court shall be liens on the real estate of the person
against whom they are rendered, situate in the county for
which the court is held.   Section 5, of the same chapter, pro-
vides that such liens shall commence on the day of the rendi-
tion of the judgment, and shall continue for three years, sub-
ject to be revived, as provided by that chapter.   In construing
the 99th sec. of chap. 4, *Gould's Digest*, prescribing the mode of
the classification of claims against the estates of deceased
persons, as relates to claims having priority over contract debts,
it must be done with reference to the 4th and 5th secs. of the
96th chap., of the *Digest;* and, in so doing, we think it is evident
that it was the intention of the Legislature to make those
judgments only, that were rendered by the courts within our
own State, and that were liens or capable of being liens upon
the real estate of the deceased, during his lifetime, had he
possessed any, and subsisting as such liens at the time of his
death.   The trust reposed in Jackson, by the Tennessee chan-
cery court, as trustee for his wife, the appellee, Mary R., and
her children, was but an ordinary trust, imposing on him the
ordinary duties of trustees of that class, as that of taking
possession of and controlling the trust fund or property, and of
keeping, preserving and properly using the same according to
the intention of the grantor, as can be drawn from the instru-
ment creating the trust, and to duly account therefor ; and a
failure of the trustee to perform such duties, or any that may
be imposed upon him, under our laws, on the subject of admin-
istration, would create a liability against him only in the na-
ture of a contract debt; and, if to be collected from his estate
after his death, would constitute a fourth class claim, unless
the claim or liability against him had, before his death, been
elevated to the dignity of judgment, and was, at the time of
his death, a lien, or capable of being a lien, upon the real
estate, had he died possessed of any.   This brings us now to

the consideration, directly, of the question raised by the appellant's motion in the court below, to dismiss the bill for want of the affidavit required by law for the authentication of claims against the estate of deceased persons, &c. *Chap.* 4, *sec.* 102, *Gould's Digest*, requires all persons exibiting claims against the estates of deceased persons, to append to their claim or demand the affidavit required by that chapter, of the justness of the demand. The 107th section of that chapter provides as follows: "If any affidavit, as required by this act for authenticating claims against deceased persons, be not produced in an action against an executor or administrator, for a debt against the deceased, the court shall, on motion, enter a judgment of non-suit against the plaintiff; and the affidavit must appear to have been made prior to the commencement of the action." The motion, in the court below, to dismiss, doubtless was made under that statute. The counsel for the appellees insist that the court below did not err, in overruling the motion of the appellant to dismiss, and in support of their position state that, "it so happened that the motion to dismiss was put in before the filing of the affidavit;" and they gravely ask, "is this enough to turn complainants away from the court, they standing there, offering to file the statutory affidavits? Is this sort of sharp practice to be indulged in by a court of equity, and by this court, *to the denial of justice?*" It might well be said that the complainant, in the court below, not having complied with the requirement of the statute, by filing the statutory affidavit, after the motion to dismiss for the want of the affidavit was made, had no standing in court at all, because the statute requires that the affidavit should not only be made, but unquestionably requires it *to " appear to have been made prior to the commencement of the action."*

From the record, in this case, we find that the affidavit was not made until after the hearing and final decree in the court below, though the appellees offered to file the affidavit, after the appellant had moved the court to dismiss their bill for want of it, if the court required it.

This court, in a number of cases, have held that the affidavit required, *sec.* 102 *Gould's Digest*, is necessary to entitle a claimant to bring and maintain a suit against an executor or administrator, and avoid a non-suit in case of objection being made for want of it. *Beirne and Burnside v. Imboden, et al., admrs.*, 14 *Ark.*, 237. In that case, the court, Justice SCOTT delivering the opinion, said, "when a claim is exhibited by the act of the party out of court, the claimant shall append to his demand an affidavit ; when he exhibits by means of a proceeding in court, the affidavit must be produced, and it must appear to have been made prior to the commencement of the proceeding." We can not see how any other conclusion could be arrived at. It is irresistible, from the language of the statute, that the court below had not the power to deprive the appellant of the defense afforded him by the statute, by means of the motion to dismiss, and which perhaps it was his duty to make, by allowing the appellees, at that stage of the proceeding, to come in and file the affidavit, or to dispense with the affidavit altogether.

This court held, in the case of *Ryan, et al., v. Lemon, admr.*, 2 *Eng.*, 78, that the objection, for want of the affidavit, might be taken at any time before final judgment, on motion of the defendant, though he had no plea in.

It was doubtless the design of the Legislature, by this statute, to furnish a protection to the estates of deceased persons, by requiring those presenting claims to the executor or administrator, who can not always know the condition of the affairs of his intestate, an affidavit of the correctness and justness of their claim ; and the courts have no power to relieve claimants from the performance of that duty when they are seeking to enforce their claims by proceeding in courts, and when objection is made on that ground. To concede that the court had that power, would amount to a defeat of the object and will of the legislative branch of the Government, which, it is clear, the judicial branch has no power to do, so long as that branch of the Government keeps within its well defined constitutional limits.

The court below erred in overruling the appellant's motion to dismiss the bill, and for this error, the decree of that court · is reversed; and, a decree will be made by this court dismissing the appellee's bill; and, decreeing the appellee to pay the costs in this court and in the court below.